UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NAIM QASEMI,

       Petitioner,

       v.                                 CAUSE NO. 3:26cv170 DRL-SJF

BRIAN ENGLISH,

       Respondent.

OPINION AND ORDER

Immigration detainee Naim Qasemi filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that he is being unlawfully detained in the custody of United States Immigration and Customs Enforcement (ICE). The Warden answered the petition, and Mr. Qasemi replied. The court now grants the petition.

Mr. Qasemi is a national and citizen of Afghanistan who came to the United States in 1989 at the age of 12 as a refugee [9-1]. He was ordered removed from the United States on February 2, 2007, under 8 U.S.C. § 1227(a)(2)(A)(iii), for committing an aggravated felony. His removal could not be effectuated, so he was released from immigration custody on October 8, 2008, on a supervision order. On September 3, 2009, Mr. Qasemi violated the terms of his release when he did not report as required. He was apprehended by ICE on March 17, 2011 and detained. He was released eight months later on November 4, 2011. He violated the terms of his release again on May 9, 2012, when he failed to report.

Mr. Qasemi has a long criminal history, ranging from 1996 through 2022, consisting of eleven misdemeanor convictions and two felony convictions—a 2008 conviction for

criminal possession of stolen property and a 1996 conviction for attempted criminal possession of stolen property [9-1]. There is some understanding of the motivation to remove Mr. Qasemi if he cannot comply with the law, including abiding his supervision order imposed by immigration authorities. Why this was not done before, no one says.

On May 1, 2024, ICE detained Mr. Qasemi to remove him to Afghanistan. Mr. Qasemi filed this habeas petition in February 2026, after a year and nine months in detention, arguing his continued detention was unlawful because his removal was not reasonably foreseeable. He argued his removal was not reasonably foreseeable because there is no diplomatic relationship or repatriation agreement between the United States and Afghanistan, there is no Afghan consulate in the United States, the Taliban is not recognized by the United States as a legitimate government, and Afghanistan does not recognize him as a citizen.

In answering the petition, the Warden (though his federal counsel) provides a declaration from a deportation officer, stating that ICE Enforcement and Removal Operations (ERO) is continuing to work on removing Mr. Qasemi to Afghanistan. The officer attests that Afghanistan currently requires a Taliban-issued transportation letter for accepting removal of its citizens, and ICE ERO Chicago is currently preparing a formal request for submission to Afghan officials.

In reply, Mr. Qasemi relies on the fact that ICE could not remove him in 2008 or 2011 and did not make any effort to remove him over the next 13 years until he was re-detained in 2024. He asserts that it is even harder now to remove him to Afghanistan because in 2008 and 2011 Afghanistan had a consulate presence in the United States, and the process was

straightforward, yet still unsuccessful. Now, he contends, there is no Afghan consulate in the United States and Afghanistan's requirements have changed, such that only an original passport issued by the current government will allow those claiming Afghani citizenship to return to the country. He contends that since he was not recognized as a citizen in 2008 or 2011, he would not be now. He argues that the Warden's reliance on a formal travel request being prepared is too non-specific to show his removal is reasonably foreseeable. He asserts that his family reached out to the Afghani consulate in Qatar and were told that the only document that would allow entry into Afghanistan is an original passport issued by the current government.[1]

The Warden first argues that the court lacks subject matter jurisdiction to consider the petition based on 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 2-3 (N.D. Ind. Mar. 26, 2026); *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005); *Zadvydas*

---

[1] Mr. Qasemi filed a motion to supplement his habeas petition. He seeks to add evidence about his deteriorating medical condition and the inadequate care he is receiving as a further basis for relief. The court will deny this motion because his medical condition does not bear on the lawfulness of his detention, and the court does not have jurisdiction in habeas to hear claims regarding the conditions of confinement. The scope of a habeas petition is limited to questions about the fact or duration of confinement, not its conditions. *See, e.g., Robinson v. Sherrod*, 631 F.3d 839, 840–41 (7th Cir. 2011) ("When there isn't even an indirect effect on duration of punishment . . . we'll adhere to our long-standing view that habeas corpus is not a permissible route for challenging prison conditions."); *see also Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 114–15, 118 (2020) (Asylum seeker's habeas petition was properly dismissed given that it sought only an "opportunity to apply for asylum and other applicable forms of relief" and not "release from custody. . . . Such relief might fit an injunction or writ of mandamus . . . but that relief falls outside the scope of the common-law habeas writ."); *E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021) ("E.F.L.'s habeas petition does not 'contest[ ] the lawfulness of restraint' or seek to 'secur[e] release' from custody; it instead vies for her right to 'remain in [the United States] or to obtain administrative review potentially leading to that result.'") (quoting *Thuraissigiam*, 591 U.S. at 117).

*v. Davis*, 533 U.S. 678, 699 (2001); *Vu v. English*, No. 3:25cv999, 2026 WL 194171, 2-3 (N.D. Ind. Jan. 26, 2026) (discussing § 1252(b)(9) and § 1252(g)); *Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 1-2 (N.D. Ind. Jan. 14, 2026) (discussing § 1252(g)).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Qasemi originally ended in 2008. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[2] Given he was removed under 8 U.S.C. § 1227(a)(2), Mr. Qasemi's detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all

---

[2] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned

5

on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations— are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old

adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 4-5 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 3-4 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[3] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

One might, even if mistakenly, jump to the conclusion that Mr. Qasemi's case is open and shut because he has been detained for more than two years and the only progress the government reports is that ICE ERO Chicago is preparing a formal travel document request for submission to Afghan officials. The government offers no explanation for why such a request has not been made over the past two years that Mr. Qasemi has been detained.

Public records, however, help explain some delay. According to *Qasemi v. Garland*, No. 25cv6020, 2025 WL 1064736 (W.D.N.Y. Apr. 9, 2025), *reconsideration denied,* No. 25cv6020, 2025 WL 1341244 (W.D.N.Y. May 8, 2025), ICE attempted to remove Mr. Qasemi to Afghanistan in October 2024, about five months after he was re-detained, but there was an incident at the Abu Dhabi airport that prevented his removal from happening. In a habeas proceeding filed January 8, 2025, the court found that the removal did not occur because of Mr. Qasemi's noncooperation at the airport, and his continued detention was reasonable

---

[3] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

because if the government had been able to obtain travel documents for October 2024, it was reasonably foreseeable that new documents could be obtained. *See id.* at 5. The court noted, though, that obtaining new documents would be more challenging because in January 2025, Afghanistan changed the entry requirements, requiring a physical passport book, rather than just copies, and ICE did not have the documents needed to remove Mr. Qasemi. *Id.* Nevertheless, the court concluded that ICE was entitled to a reasonable opportunity to navigate the changed entry requirements, which were necessitated because of Mr. Qasemi's noncooperation. *Id.* at 6.

Mr. Qasemi filed a second habeas petition about three months after his first petition was denied. *See Qasemi v. Kurzdorfer*, No. 25cv668, 2025 WL 2938607 (W.D.N.Y. Oct. 16, 2025). At that point, immigration authorities were continuing to negotiate with Afghanistan to effectuate his removal and intended "to request an official travel letter from Afghanistan in the very near future." *Id.* at 1. Immigration authorities also began looking into removal to other countries, including Mexico, Brazil, and the United Kingdom. *Id.* The court found that Mr. Qasemi's removal remained reasonably foreseeable. Significant to the court's analysis was that, though Mr. Qasemi had been detained more than seventeen months, his own noncooperation "caused his initial period of detention to be wasted," so the government did not need to meet a higher threshold of foreseeability based on the length of detention *Id.* at 4-5 ("Given that Petitioner's noncooperation increased the length of his civil detention, immigration authorities are not properly charged with the more 'onerous' burden that they would otherwise bear under the circumstances."). The court was satisfied that the government continued to make progress toward his removal through the negotiations with

the Afghanistan government and investigating potential third-country removals, and noted that bureaucratic delays in those efforts were to be expected. *Id.*

That background informs this court on how to proceed. Mr. Qasemi filed this habeas petition in February 2026, about four months after his second habeas petition was denied. He has surpassed a total of two years of detention—an unusual mark to be fair. But, like the Western District of New York, the court must reassess this time when Mr. Qasemi contributed to the delay. That said, the government has had more than a year and a half since the government of Afghanistan changed the requirements for a travel document in January 2025, and no request was made. There is no contention that Mr. Qasemi was uncooperative during that time to explain that delay. The deportation officer attested that as of April 13, 2026, when the declaration was signed, that ICE ERO Chicago was "currently preparing" a formal request for submission to Afghan officials [9-2]. There is no update now, three months later, that the request has been submitted or any timeline given about when that request might be considered or approved.

Regardless of what happened before in Mr. Qasemi's detention, he has provided good reason to believe that his removal to Afghanistan is not reasonably foreseeable. For his current detention to remain reasonable, the government must provide more than a mere hope that a travel document request might soon be ready for submission. Accordingly, consistent with *Zadvydas*, 533 U.S. at 699-700, and because removal is not reasonably foreseeable, the court finds "continued detention unreasonable and no longer authorized by statute," albeit with his release occurring under supervision. The government has not

argued some other basis for his detention, and the court must remain within the points raised by the parties.

For these reasons, the court:

(1) DENIES the motion to supplement (ECF 13);

(2) GRANTS the petition (ECF 1) to the extent that the court ORDERS the respondent to release Naim Qasemi on appropriate conditions of and to certify compliance with this order by filing a notice with the court by **July 20, 2026**, and

(3) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure Naim Qasemi's release.

SO ORDERED.

July 17, 2026                                   _s/ Damon R. Leichty_
                                                Judge, United States District Court

10